**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| MICHAELA BOHEMIA, LLC, | : | Case No. 1:21-cv-463 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| FEDEX CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

---

### ORDER AND OPINION

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 39), Defendant FedEx Corporation's Motion for Partial Summary Judgment (Doc. 41), Defendant Total Quality Logistics, LLC's Motion for Summary Judgment (Docs. 42, 44), and Plaintiff's Motion to Strike ("Objection to") Affidavit of Marc Bostwick (Doc. 50). Each motion has been fully briefed. (*See* Docs. 39, 41, 44, 46-52, 55, 57.) Thus, this matter is ripe for review.

For the following reasons, Plaintiff's Objection to the Affidavit of Marc Bostwick (Doc. 50) is **SUSTAINED IN PART**. Defendant Total Quality Logistics, LLC's Motion for Summary Judgment (Doc. 44) is **GRANTED**; Plaintiff's Motion for Summary Judgment (Doc. 39) is **GRANTED IN PART AND DENIED IN PART**; and Defendant FedEx Corporation's Motion for Partial Summary Judgment (Doc. 41) is **GRANTED**.

## FACTS

This case centers on Plaintiff Michaela Bohemia, LLC's shipment of goods, which involved Defendants Total Quality Logistics, LLC, and FedEx Corporation.

### I. The Parties

Plaintiff Michaela Bohemia, LLC, is a Florida corporation that sells skincare products. (Am. Compl., Doc. 8, ¶1.) Defendant FedEx Freight, Inc. ("FedEx") is a common carrier incorporated in Delaware. (*Id.* ¶3.) Defendant Total Quality Logistics, LLC, ("TQL") is an Ohio limited liability company in the business of brokering transportation of goods. (*Id.* ¶2.)

### II. The Arrangement between Plaintiff and TQL

In May 2019, Plaintiff's representative, Michael Gibson (also known as Chad Gibson), contacted TQL to arrange shipment of cosmetics from Missouri to Florida. (Michael Gibson Aff., Doc. 34, Pg. ID 666.) Gibson and TQL representative Jahan Swanson communicated via email and text message about the various shipping options, including the difference between a full truckload shipment ("FTL") and a less-than-truckload shipment ("LTL"). (*Id.*) An FTL involves a single shipper's goods being transported by a single motor carrier, while an LTL involves multiple shippers' goods being transported together by a single motor carrier. (Michael Gibson Dep., Doc. 32, Pg. ID 316.) Usually, an FTL costs more than an LTL. (*Id.*) On May 13, 2019, Gibson and Swanson communicated about TQL's services, indicating that Plaintiff required cosmetics to be transported from Missouri to Florida. (*Id.* at Pg. ID 362-63.) Gibson stated that Plaintiff would prefer the "cheapest price," and suggested that Plaintiff would want an LTL

2

shipment. (Gibson Email, Doc. 34-1.) The same day, Swanson replied to Gibson via text message, stating that transit times differed between LTL and FTL shipments, and that TQL "insure[s their] loads up to $500,000" without costing the customer "any extra." (Swanson Text, Doc. 32-21, Pg. ID 454-55.)

Gibson and Swanson did not discuss insurance of the shipment any further until June 6, 2019, when Plaintiff signed TQL's General Terms and Conditions ("TQL's Terms") as part of TQL's Customer Application. (Gibson Aff., Doc. 34, Pg. ID 667; TQL Terms, Doc. 32-10, Pg. ID 434.) Section 5 of TQL's Terms stated:

> TQL is a transportation broker only who arranges the transportation of freight by independent third-party motor carriers ("Contract Carriers"). [Plaintiff] agrees that if TQL is listed on Bills of Lading, it is for convenience only and does not change TQL's status as a broker only.

(TQL Terms, Doc. 32-10, Pg. ID 434, ¶5.) Section 8 of TQL's Terms provides:

> TQL's Contract Carriers are required to maintain cargo insurance in the amount of $100,000 per load. [Plaintiff] will not tender loads valued in excess of $100,000 without first giving TQL sufficient written notice to arrange for increased insurance limits. Failure to provide such written notice prior to tender will result in [Plaintiff]'s loads being insured to a maximum of $100,000.

(*Id.* ¶8.)

TQL's Terms also explicitly incorporate TQL's Multi-Mode Terms and Conditions ("Multi-Mode Terms"), applicable to modes of transportation other than FTL, including LTL shipments. (*Id.* ¶11.) Section 11 of TQL's Terms states:

> [Plaintiff] agrees that all loads transported by a mode other than full truckload (including, without limitation, less-than-truckload ("LTL"), intermodal, ocean, air, and rail) or involving customs brokerage are subject to the Multi-Mode Terms and Conditions in effect on the date of shipment tender ("Multi-Mode Terms"), which may be accessed on TQL's website

3

https://trax.tql.com/app/ltl/data/MultiModeTermsConditions.pdf or a copy will be provided to [Plaintiff] upon request. The Multi-Mode Terms are incorporated into these General Terms as if fully rewritten herein.

(*Id.*)

Section 7 of the Multi-Mode Terms provides details about LTL shipments. (Multi-Mode Terms, Doc. 32-10, Pg. ID 440, ¶7.) Specifically, it reiterates that TQL is a freight broker only and is not a motor carrier. (*Id.*) In the event that the terms of any agreement between Plaintiff and TQL conflicted with the Carrier Rules in effect, the Carrier Rules control. (*Id.*) Moreover, it states that the parties agree that TQL is not a carrier and is not liable for any loss, damage, mis-delivery, or non-delivery, regardless of any cause. (*Id.*) Finally, regarding insurance, it states that Carrier Rules will determine coverage offered on any shipment and that TQL has no responsibility or liability relating to the "issuance, denial, or payment or any claim by Carrier, insurance or any other party." (*Id.*)

## III.    The Shipment of Goods

On June 12, 2019, pursuant to the agreement, FedEx picked up Plaintiff's eight pallets from Hannibal, Missouri, to transport them to their destination in Orlando, Florida. (Gibson Dep., Doc. 32, Pg. ID 260.) At pickup, Plaintiff's representative and the FedEx driver signed the Bill of Lading, confirming that the items were in good condition. (*Id.*; Bill of Lading, Doc. 32-11.) On June 19, 2019, the FedEx truck carrying the cosmetics arrived at the destination. (Doc. 32, Pg. ID 336.) Plaintiff discovered, upon the truck's arrival, that only seven of the eight pallets were on the truck, and those seven pallets were significantly damaged. (FedEx Receipt, Doc. 32-14, Pg. ID 446.) Gibson then contacted TQL's claims department to report the damaged and missing goods. (*Id.* at Pg. ID 337.)

On June 20, 2019, TQL submitted the claim to FedEx. (Philpot Email, Doc. 32-15, Pg. ID 447.) On January 6, 2020, TQL received an email from FedEx, indicating that FedEx had rejected Plaintiff's initial claim and instead was offering a much lower amount. (Nicki Philpot Dep., Doc. 35, Pg. ID 725.) FedEx's offer was based on a rate of $2 per pound of the shipment, as the carrier rules and tariffs outlined. (Jodi Spears Dep., Doc. 38, Pg. ID 853; Spears Decl., Doc. 40, ¶¶ 5, 13.) FedEx's Tariff states that, for an LTL shipment, FedEx's liability is limited to $2.00 per pound of cargo, or $10,000, whichever is lower. (*Id.* ¶13.)

## PROCEDURAL POSTURE

On June 3, 2021, Plaintiff filed this lawsuit in Clermont County Court of Common Pleas, bringing breach of contract claims against both Defendants, a promissory estoppel claim against TQL, as well as claims of negligence and conversion against FedEx. (Compl., Doc. 4.) On July 12, 2021, FedEx properly removed the action to this Court on grounds of federal question jurisdiction. (Notice of Removal, Doc. 1.) On August 10, 2021, Plaintiff amended its Complaint by substituting the negligence and conversion claims against FedEx with a claim under the Carmack Amendment; Plaintiff maintained the same breach of contract and promissory estoppel claims. (Am. Compl., Doc. 8.) Both TQL and FedEx moved to dismiss. (*See* Docs. 5, 9, and 11.) This Court granted FedEx's Motion to Dismiss the breach of contract claim but denied all other motions. (Order, Doc. 17.) At present, Plaintiff's breach of contract and promissory estoppel claims against TQL and Carmack Amendment claim against FedEx remain.

## LAW & ANALYSIS

As the parties have filed several motions, the Court will consider each in turn, beginning with Plaintiff's Objection. Then, the Court will examine the three motions for summary judgment, starting with Defendant TQL's and Plaintiff's, and finally, FedEx's motion.

### I.    Plaintiff's Objection to the Affidavit of Marc Bostwick

The Court will first consider Plaintiff's Motion to Strike the Affidavit of Marc Bostwick (Doc. 50). While Plaintiff originally filed this document as a Motion to Strike, TQL pointed out, and both parties agree, that the Court should construe the Motion as an Objection. Pursuant to Federal Rule of Civil Procedure 56(c)(2), the Court will construe this motion as an Objection.

Federal Rule of Civil Procedure 56(c)(2) states that, at the summary judgment stage, a party may object that material cited to support or dispute a fact would not be admissible as evidence. Subsection (4) declares that an affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The affiant, however, does not need to personally witness the events to have personal knowledge of them. *Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.*, 696 Fed. App'x 717, 722 (6th Cir. 2017). Rather, an affidavit based on the reports of others satisfies the personal knowledge requirement. *Id.* The review of regularly kept business records can also form the basis for personal knowledge. *Lloyd v. Midland Funding, LLC,* 639 Fed. App'x 301, 304 (6th Cir. 2016). And, in litigation involving

6

a corporation, there is no obligation to select an affiant "with personal knowledge of the events in question, so long as the corporation proffers a person who can answer regarding information reasonably available to the corporation." *Id.* (citing *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal quotations omitted)).

In support of its Motion for Summary Judgment, TQL attached the affidavit of Marc Bostwick, a risk manager for TQL. (Motion, Doc. 44; Bostwick Aff., Doc. 43.) Plaintiff objects to TQL's reliance on this affidavit because Bostwick has not shown that he has firsthand knowledge of TQL's innerworkings or of the facts to which he attests. (Motion, Doc. 50, Pg. ID 1168.) Bostwick did not claim to have witnessed or engaged in any of the events leading up to Plaintiff's ultimate loss of property. (*Id.*) And, TQL had not included Bostwick in its fact witness disclosures. (*Id.*; *see also* Disclosure, Doc. 26, Pg. ID 206-07.)

In response, TQL notes the exhibits on which Bostwick relied when making his affidavit. (Response, Doc. 55, Pg. ID 1242-43.) Those exhibits include: the emails and texts between Gibson and Swanson; TQL Terms signed by Plaintiff; the Multi-Mode Terms; the Bill of Lading for Plaintiff's eight pallets; TQL's notice to FedEx of Plaintiff's claim; TQL's claim notes from Plaintiff's claim; FedEx's January 6, 2020, email to TQL; TQL's January 6, 2020, email to Plaintiff notifying it of FedEx's payment offer; and a copy of FedEx's Certificate of Liability Insurance that FedEx sent to TQL. (*Id.*) Plaintiff has not objected to the authenticity of any of these documents. (*See* Motion to Strike, Doc. 50; Reply to Motion to Strike; Doc. 57.)

Courts have held that basing an affidavit on the reports of others satisfies the personal knowledge requirement of Rule 56(c)(4). *Wylie*, 696 F. App'x at 722. In forming

his affidavit, Bostwick relied on the reports of others at TQL, including notes regarding Plaintiff's claim, copies of written communications with Plaintiff, and standard TQL contracts. (*See* Bostwick Aff., Doc. 43.) And, as TQL is a corporation, an affiant speaking on its behalf need not have personally experienced the events to have personal knowledge of them. *Lloyd,* 639 Fed. App'x at 304. Instead, Bostwick can meet the personal knowledge requirement by relying on any information reasonably available to the corporation. *Id.* All of the documents on which Bostwick relied are those which are reasonably available to the corporation: communications from TQL employees to Plaintiff and FedEx; standard TQL terms; the bill of lading TQL issued; TQL's internal notes on Plaintiff's claim; and other company records not attached as exhibits. (Response, Doc. 55, Pg. ID 1242-43, 1246.) And, even if the copies of written communication were also provided during discovery, those communications would still reasonably be available to the corporation, as the messages involve official business matters. Thus, for purposes of Rule 56(c)(4), Bostwick has met the personal knowledge requirement.

But, TQL failed to disclose Bostwick as a fact witness pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i). Rule 26, in part, requires that parties disclose the identity of witnesses that they may use to support their claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 37 further requires that if a party fails to provide the identity of a witness as required by the rule, then the party may not use that witness to "supply evidence on a motion." Fed. R. Civ. P. 37(c)(1). Rule 37 provides exceptions where the nondisclosure was substantially justified or harmless. *Id.* The Sixth Circuit has instructed courts to consider five factors when looking for substantial justification:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). District courts have "broad discretion in applying these factors and need not apply each one rigidly." *Bentley v. Highlands Hosp. Corp.*, No. 15-CV-97, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016).

On the first factor, TQL points out that Plaintiff had notice of Bostwick, as Bostwick responded to Plaintiff's First Set of Interrogatories on July 21, 2023. (Response, Doc. 55, Pg. ID 1254-57.) TQL argues that Plaintiff therefore knew of Bostwick from the interrogatories and could have deposed him. (*Id.* at Pg. ID 1254.) However, this argument fails because the deadline for disclosure of fact witnesses was June 1, 2023. (Calendar Order, Doc. 24.) Plaintiff received the First Set of Interrogatories identifying Bostwick on July 23, 2023. Courts have found no surprise exists where the nonconforming party had also produced the evidence *earlier* in discovery. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019). But here, TQL produced the name of Bostwick, through his response to the interrogatories, *after* it provided its disclosure of fact witnesses. Plaintiff could not reasonably anticipate Bostwick as a witness if it only learned of him after TQL provided the witness list without his name. The Court therefore finds that the factor of surprise weighs in favor of Plaintiff.

On the second factor, the Court finds that the cure of surprise weighs in favor of TQL. Plaintiff was on notice from July 21, 2023, almost a year before the dispositive motion deadline, that Bostwick was a Risk Manager for TQL who had information on its

claims process and could be deposed. (Response, Doc. 55, Pg. ID 1255.) Additionally, the discovery closure date was May 31, 2024. (Order, Doc. 31.) Yet, Plaintiffs did not depose Bostwick or otherwise attempt to cure the surprise in that time. The Sixth Circuit has held that failure to cure surprise has a significant impact on the remaining factors. *Bisig*, 940 F.3d at 220. For instance, for the third factor, if Plaintiff made no effort to cure, then it follows that there would be no disruption to the trial. *Id.* This is especially true when, like here, the parties have "not even scheduled trial." *Id.* The third factor thus falls in favor of TQL.

Turning to the fourth factor, the importance of evidence can cut both ways. *Id.* But again, where Plaintiff has made no effort to cure the surprise, the importance of Bostwick's affidavit weighs in favor of TQL. *Bisig*, 940 F.3d at 220. The final factor, TQL's explanation, falls in favor of Plaintiff, though. TQL does not provide a thorough explanation for why it failed to disclose Bostwick on its fact witness list, other than it was not intending to "withhold" or "prejudice" Plaintiff. Without a better justification for its nonconformance, the fifth factor weighs in Plaintiff's favor. With three out of the five factors weighing in TQL's favor, though, the Court finds that the nondisclosure was harmless. Bostwick's affidavit can be considered in TQL's pending Motion for Summary Judgment.

Plaintiff also argues that the documents attached to the affidavit contain hearsay, rendering those documents and the related affidavit statements inadmissible. (Motion, Doc. 50, Pg. ID 1169-71, 1173-75; Reply, Doc. 57, Pg. ID 1270-72.) Specifically, Plaintiff objects that the claims notes (Doc. 43-7) and copies of written communication (Docs. 43-

10

1, 43-2, 43-6, 43-8, and 43-9) contain hearsay. (Motion, Doc. 50, Pg. ID 1169-71, 1173-75.) The statements contained in these documents are out-of-court statements offered to prove the truth of the matter asserted. While hearsay exceptions exist, it is "[t]he proponent of a hearsay statement [who] bears the burden of proving each element of a given hearsay exception or exclusion." *United States v. Day*, 789 F.2d 1217, 1221 (6th Cir. 1986); *see also* Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.") In response, TQL does not provide an applicable hearsay exception or address Plaintiff's hearsay argument at all. Without presenting the evidence in an admissible form or explaining how it can be admissible, TQL has not met its burden. The claims notes (Doc. 43-7) and copies of written communication (Docs. 43-1, 43-2, 43-6, 43-8, and 43-9) therefore contain inadmissible hearsay. These statements, along with the portions of Bostwick's affidavit that rely on them, cannot be used to support TQL's Motion.

## II. Motions for Summary Judgment

The Court now turns its attention to the parties' Motions for Summary Judgment. (Docs. 39, 41, 44.) When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to establish that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to

specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court need not search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). A "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element upon which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

Plaintiff brings breach of contract and promissory estoppel claims against TQL and a Carmack Amendment claim against FedEx. (Am. Compl., Doc. 8, ¶¶ 12-35; Order, Doc. 17.) TQL brings an indemnification claim against FedEx. (Crossclaim, Doc. 22.) Now, Plaintiff moves for summary judgment against both Defendants. (Doc. 39.) TQL moves for summary judgment against Plaintiff. (Doc. 44.) FedEx moves for partial summary judgment as to the damages claimed by Plaintiff. (Doc. 41.) For clarity, the Court will proceed through each claim individually and address all parties' arguments together.

### a. Preemption under the Carmack Amendment

First, the Court will examine whether the Carmack Amendment preempts Plaintiff's claims against TQL. In response to Plaintiff's Motion for Summary Judgment, TQL asserts that the Carmack Amendment precludes all other claims Plaintiff brings against TQL. (Response, Doc. 48, Pg. ID 1125.) As the broker, not the carrier, TQL

contends that it cannot be liable to Plaintiff because Plaintiff's Carmack Amendment claim against FedEx precludes any other claims for the lost or damaged goods. (*Id.* at 1132.) Plaintiff concedes that the Carmack Amendment preempts state or common-law claims that a shipper may have against a common carrier. (Reply, Doc. 49, Pg. ID 1154.) But, Plaintiff points out that the preemptive scope does not prevent breach of contract claims against the broker. (*Id.*)

The Court agrees that the Carmack Amendment says nothing about "broker liability." *See* 49 U.S.C. § 14706(a)(1); *see also Heliene, Inc. v. Total Quality Logistics, LLC.* Case No. 1:18-CV-799, 2019 WL 4737753, at *2 (S.D. Ohio Sept. 27, 2019). Courts in this Circuit have held that the Carmack Amendment does not preempt state-law claims against brokers. *See, e.g., Heliene,* 2019 WL 4737753, at *2; *Universal Med. Sys., Inc. v. C.H. Robinson Worldwide, Inc.,* No. 1:12-CV-126, 2013 WL 12138550, at *3 (N.D. Ohio Feb. 6, 2013); *Schneider Elec., USA v. Landstar Inway, Inc.,* No.1:11-CV-801, 2012 WL 3234244, at *1 (S.D. Ohio Aug. 7, 2012). Plaintiff's claims against TQL, therefore, are not preempted by the Carmack Amendment, as TQL is the broker. Having settled this preliminary matter, the Court will now address Plaintiff's claims against TQL.

### b. Plaintiff's Breach of Contract Claim Against TQL

For a breach of contract claim, the claimant must show: (1) a contract existed; (2) the non-breaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages because of that failure. *Lucarell v. Nationwide Mut. Ins. Co.,* 97 N.E.3d 458, 469 (Ohio 2018). Both Plaintiff and TQL move for summary judgment on this claim.

(Docs. 39, 44.) Plaintiff argues that the record shows it has met all elements of the claim. (Doc. 39.) On the contrary, TQL argues that there is no genuine dispute that it fulfilled its contractual obligations with Plaintiff. (Doc. 44.)

The parties agree that they entered an enforceable contract on June 6, 2019, when Plaintiff's representative Michael Gibson signed TQL's Terms (Doc. 32-10, Pg. ID 434), which incorporated the Multi-Mode Terms (Doc. 32-10, Pg. ID 435-41). (Plaintiff's Motion, Doc. 39, Pg. ID 885; TQL's Motion, Doc. 44, Pg. ID 1065-66.) That agreement states that TQL is only a freight broker and will not be liable for any loss, damage, mis-delivery, or non-delivery, regardless of the cause. (TQL Terms, Doc. 32-10, Pg. ID 434, ¶11; Multi-Mode Terms, Doc. 32-10, Pg. ID. 440, ¶7.) The agreement also provides that the Carrier Rules will determine insurance coverage and that TQL requires all of its carriers to insure their loads up to $100,000. (TQL Terms, Doc. 32-10, Pg. ID 434, ¶8; Multi-Mode Terms, Doc. 32-10, Pg. ID 440-41, ¶7.) Furthermore, if a customer requires that its load will exceed $100,000 value, the customer must first give TQL sufficient notice of the increased value before tendering the load. (TQL Terms, Doc. 32-10, Pg. ID 434, ¶8.)

TQL contends that it fulfilled its contractual obligations as the freight broker under the parties' agreement. (Motion, Doc. 44, Pg. ID 1068.) According to TQL, Plaintiff has failed to point to a contractual provision that it believes TQL breached. (*Id.* at Pg. ID 1067-68.) Instead, in its Amended Complaint, Plaintiff alleges breaches that are not supported by any contractual provision, such as the duty to "transport and deliver the goods in like good order as when received and accepted." (Am. Compl., Doc. 8, ¶¶16, 19, 21.) But, as the parties established, TQL is not the motor carrier, and no part of their agreement

14

otherwise states that TQL has these duties. (*See* TQL's Terms, Doc. 32-10, Pg. ID 434; Multi-Mode Terms, Doc. 32-10, Pg. ID 435-41.) TQL is correct that there is no genuine dispute of a breach of contract as to the duties Plaintiff spells out in its Amended Complaint; those duties were not in the contract.

Plaintiff, however, claims that TQL breached section 8 of TQL's Terms. (Motion, Doc. 39, Pg. ID 886; Response, Doc. 47, Pg. ID 1098.) Plaintiff alleges that Gibson's conversation with TQL's Swanson gave TQL sufficient notice that its load was valued at $500,000. (Motion, Doc. 39, Pg. ID 886; Response, Doc. 47, Pg. ID 1098.) Accordingly, TQL was obligated to make sure the carrier's insurance would cover that higher amount. (Motion, Doc. 39, Pg. ID 886; Response, Doc. 47, Pg. ID 1098.) Plaintiff supports this claim with the evidence of the text message exchange between Gibson and Swanson, in which Gibson asks whether insurance is included in TQL's services and Swanson states that TQL insures its loads up to $500,000. (Motion, Doc. 39, Pg. ID 886-88; Response, Doc. 47, Pg. ID 1098-1100.) Thus, according to Plaintiff, the parties' agreement included the promise by TQL that Plaintiff's load would be insured at a $500,000 value. (Motion, Doc. 39, Pg. ID 886-88; Response, Doc. 47, Pg. ID 1098-1100.)

This argument fails for many reasons. First, TQL's Terms make clear that LTL loads, like Plaintiff's, are governed by the Multi-Mode Terms, not by section 8 of TQL's Terms. (TQL Terms, Doc. 32-10, Pg. ID 434, ¶11.) And, section 7 of the Multi-Mode Terms sets out the insurance terms and requirements for Plaintiff's load. (Multi-Mode Terms, Doc. 32-10, Pg. ID 440, ¶7.) Section 7 does not state that the customer can insure their LTL load for a higher amount, but simply states that the carrier's insurance policy will protect

15

the LTL load. (*Id.*) Moreover, ignoring that the Multi-Mode Terms' insurance provision is controlling, Section 8 of TQL's Terms does not promise that TQL will provide Plaintiff with $500,000 of insurance. (TQL Terms, Doc. 32-10, Pg. ID 434, ¶8.) It only states that TQL's contracted carriers have insurance for at least $100,000 per load and the customer must provide TQL with notice that it requires additional insurance. (*Id.*) There is no mention that TQL itself will provide the customer with a certain amount of insurance. (*Id.*)

Furthermore, as TQL pointed out, Plaintiff's contention that the conversation between Gibson and Swanson created notice of Plaintiff's need for $500,000 insurance falls short. Nowhere in the exchange does Gibson assert that Plaintiff's load will need to be insured in the amount of $500,000. (Gibson Email, Doc. 34-1; Swanson Text, Doc. 32-21, Pg. ID 454-55.) That specific number is only mentioned by Swanson, when he wrote that TQL's loads are insured up to $500,000 at no extra cost. (Swanson Text, Doc. 32-21, Pg. ID 454-55.) Gibson did not respond to Swanson's statement with acknowledgment that Plaintiff would require insurance in that amount. (Gibson Email, Doc. 34-1; Swanson Text, Doc. 32-21, Pg. ID 454-55.) Therefore, even if section 8 were controlling over the LTL load, there is no record of Plaintiff's notice to TQL that it required additional insurance. TQL had no duty to provide such additional insurance under the parties' agreement.

For all these reasons, Plaintiff has established no contractual duty that TQL breached. TQL, on the other hand, has shown that no genuine issue of material fact as to Plaintiff's breach of contract claim exists. TQL did not breach its contractual duties to Plaintiff, and its motion for summary judgment on this claim is granted.

### c. Plaintiff's Promissory Estoppel Claim Against TQL

Plaintiff's next claim is that it justifiably relied on TQL's promise to insure its load up to $500,000. (Am. Compl. ¶¶22-25.) Both Plaintiff and TQL assert that they are entitled to summary judgment on this claim. (Plaintiff's Motion, Doc. 39, Pg. ID 890; TQL's Motion, Doc. 44, Pg. ID 1069.) Promissory estoppel, however, is unavailable as a remedy in the existence of an express contract between the parties. *Farnell v. Kenyon Coll.*, No. 2:18-CV-263, 2019 WL 1024961, at *4 (S.D. Ohio Mar. 4, 2019) (citing *Gibson Real Est. Mgmt., Ltd. v. Ohio Dep't of Admin. Servs.*, No. 2005-07658, 2006 WL 322304, at *3 (Ohio. Ct. App. Jan. 4, 2006)). An exception exists if the express contract and the alleged promise do not cover the same subject matter; in that case, promissory estoppel can be pled in the alternative to a claim for breach of contract. *Olympic Holding Co., LLC v. Ace Ltd.*, 909 N.E.2d 93, 96 (Ohio 2009).

Both parties agree on the existence of the enforceable, express contract that governs their shipping transaction. (Plaintiff's Motion, Doc. 39, Pg. ID 885; TQL's Motion, Doc. 44, Pg. ID 1065-66.) Plaintiff alleges that Gibson's and Swanson's pre-contract conversations created a promise that TQL would provide Plaintiff with up to $500,000 of insurance; Plaintiff then relied on this promise to its detriment. (Plaintiff's Motion, Doc. 39, Pg. ID 890.) This argument fails for two reasons: first, as discussed above, the pre-contract communications between the two parties created no agreement that TQL would provide, and Plaintiff would require, insurance up to $500,000 for Plaintiff's load. (Gibson Email, Doc. 34-1; Swanson Text, Doc. 32-21, Pg. ID 454-55.) Gibson never stated that Plaintiff required insurance in that amount, despite Plaintiff's assertion that the promise

17

between the two parties was "clear and unambiguous." (Gibson Email, Doc. 34-1; Swanson Text, Doc. 32-21, Pg. ID 454-55; Response, Doc. 47, Pg. ID 1102.) Rather, it is clear that no promise existed.

Second, if the Court had found that the parties agreed to that insurance amount during their conversations, the promissory estoppel claim still fails. Not only does an express contract exist between the parties, but that contract covers the same subject matter as the conversation: cargo insurance. When pre-contract statements and a written contract involve the same subject matter, promissory estoppel does not apply to those statements; the written contract controls. *Padula v. Wagner*, 37 N.E.3d 799, 811 (Ohio Ct. App. 2015). And, the parties do not dispute that the written contract between them includes terms for insurance coverage. (Plaintiff's Motion, Doc. 39, Pg. ID 885; TQL's Motion, Doc. 44, Pg. ID 1065-66.) Plaintiff argues that the promise revolved around insurance amounts while the contract only involved TQL's liability. (Response, Doc. 47, Pg. ID 1103.) But, this argument ignores what the Multi-Mode Terms clearly state about insurance, which is that that Carrier Rules determine coverage offered on any shipment. (Multi-Mode Terms, Doc . 32-10, Pg. ID 440, ¶7.) It is clear and undisputed that the contract and the parties' earlier conversations covered the same subject matter. Accordingly, promissory estoppel is not an available remedy.

TQL also disputes that the promissory estoppel claim fails because Plaintiff cannot establish its damages. (Motion, Doc. 44, Pg. ID 1075.) But since the Court has already found that no clear and unambiguous promise existed, there is no need to address alleged damages resulting from this claim. TQL is thus entitled to summary judgment on

Plaintiff's promissory estoppel claim. As TQL is entitled to summary judgment on both of Plaintiff's claims, TQL's indemnification crossclaim against FedEx is moot.

### d. Plaintiff's Carmack Amendment Claim Against FedEx

#### a. Damage to Plaintiff's Cargo

Plaintiff brings claims under the Carmack Amendment, 49 U.S.C. § 14706, against FedEx. (Am. Compl., Doc. 8, ¶¶ 26-35.) To prevail on a Carmack Amendment claim, the plaintiff must show: (1) that the cargo was in good condition when delivered to the carrier; (2) that the carrier failed to deliver the cargo undamaged; and (3) the amount of monetary damages caused by the failure. *CNA Ins. Co. v. Hyundai Merch. Marine Co., Ltd.,* 747 F.3d 339, 353 (6th Cir. 2014). In its Motion for Summary Judgment, Plaintiff claims it is entitled to summary judgment on this claim because the record shows it has satisfied all elements. (Motion, Doc. 39, Pg. ID 896.) FedEx, in response, concedes that Plaintiff can establish the first two elements under the Carmack Amendment. (Response, Doc. 46, Pg. ID 1086.) But, FedEx maintains that Plaintiff fails on the third element, as it has failed to prove the actual loss or damage to its cargo. (*Id.*) Meanwhile, FedEx has also filed a Motion for Partial Summary Judgment against Plaintiff, alleging that even if the Court finds FedEx liable under the Carmack Amendment, the Court should find that Plaintiff's damages are limited to $2.00 per pound, to a maximum of $10,000. (FedEx Motion, Doc. 41.) Since the parties agree that Plaintiff has established the first two elements of the Carmack Amendment, the only remaining issue in dispute is the amount of damages. The Court will thus only address the issue of monetary damages.

Plaintiff alleges that FedEx's failure to deliver its goods undamaged resulted in

$105,639.50 worth of unsellable or lost products. (Motion, Doc. 39, Pg. ID 897.) As a result, Plaintiff states that FedEx's mishandling caused Plaintiff to lose $211,279 in retail value. (*Id*; Gibson Dep., Doc. 32, Pg. ID 286.) Gibson calculated this number for Plaintiff by counting the number of usable products that arrived from FedEx and comparing that number to the number of items Plaintiff had initially shipped. (Motion, Doc. 39, Pg. ID 897; Gibson Dep., Doc. 32, Pg. ID 286.) FedEx opposes this damages calculation for two reasons: (1) retail value is an inappropriate measure of damages here since there was no guaranteed buyer of the lost goods; and (2) Plaintiff's valuation of the wholesale loss is speculative and should be decided by a jury. (Response, Doc. 46, Pg. ID 1087-88.)

Under the Carmack Amendment, a plaintiff can recover for "actual loss." *Custom Rubber Corp. v. ATS Specialized, Inc.*, 633 F. Supp. 2d 495, 515 (N.D. Ohio 2009). This actual loss is usually measured by "the reduction in market value at destination or by replacement or repair costs occasioned by the harm." *Zurich N. Am. v. Triple Crown Servs. Co.*, No. 07-133322, 2008 WL 4642864, at *5 (E.D. Mich. Oct. 20, 2008). FedEx asserts that Plaintiff has not proven actual loss. (Response, Doc. 46, Pg. ID 1086.) In support of this argument, FedEx first states that retail value, the basis for Plaintiff's claim for damages, is not appropriate for this case. (*Id.*) Because Plaintiff did not have an ultimate purchaser of its goods in mind when it shipped them, it did not lose any sales, according to this reasoning. (*Id.*) FedEx compares the facts here to a Fourth Circuit case finding that the loss for goods damaged upon delivery was best measured with a replacement cost calculation. (*Id; see also Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990)). FedEx maintains that *Oak Hill*'s facts and reasoning are on point.

20

(Response, Doc. 46, Pg. ID 1086.)

Plaintiff distinguishes the facts here from those in *Oak Hall*, though. (Reply, Doc. 49, Pg. ID 1164). Plaintiff contends that it has suffered an "ultimate loss" because it could not secure substitute goods. (*Id.*) In other words, it cannot obtain the same amount of profit, even if the remaining product is sold. (*Id.*) Thus, only the retail value of the lost and damaged items will restore Plaintiff's original potential business outcome. Replacement cost is the "proper measure" if the shipper "secured substitute goods after the accident, lost no sales, and had no opportunity for a sale with these damaged goods." *Exel, Inc. v. S. Refrigerated Transp., Inc.,* 259 F. Supp. 3d 767, 782-83 (S.D. Ohio, May 8, 2017) (citing *Oak Hill*, 899 F.2d 291 (4th Cir. 1990) (internal quotations omitted)). In *Oak Hill*, the plaintiff could find substitute goods. 899 F.2d at 296. Here, Plaintiff asserts that it failed to substitute the goods that FedEx lost or damaged; therefore, it could not make any sales. (Reply, Doc. 49, Pg. ID 1164).

To grant summary judgment on the Carmack Amendment claim, the Court must determine that Plaintiff suffered an "actual loss." *Exel,* 259 F. Supp. 2d at 782. While the Court must decide what measure of damages to apply as a matter of law, whether Plaintiff lost any sales, and thus suffered an actual loss, is a "factual issue that the Court must resolve on its way to that decision." *Id.* Plaintiff expected to have eight pallets of sellable merchandise, and, in reality, only received seven pallets of merchandise, much of which was not sellable. (Gibson Dep., Doc. 32, Pg. ID 259-60, 333.) Plaintiff may have lost sales, but the Court cannot conclude that no genuine issue of material facts exists as to this point. As FedEx pointed out, Plaintiff did not have an ultimate buyer lined up to

21

purchase the goods. (Response, Doc. 46, Pg. ID 1086.) Plaintiff could have eventually sold all the damaged goods, only a portion, or none. From the evidence in the record, however, whether Plaintiff lost sales and suffered an actual loss is still a disputed issue. Plaintiff must prove its damages to make its prima facie case. *Exel,* 259 F. Supp. 2d at 784. The record is presently unclear on this point. Without undisputed damages, Plaintiff's Motion for Summary Judgment on its Carmack Amendment claim fails.

### b. FedEx's Limited Liability

FedEx argues that, if it is found liable under the Carmack Amendment, its Tariff limits the damages available to Plaintiff. (Motion, Doc. 41.) FedEx's Tariff states that if cargo was lost or damaged, FedEx's liability would be limited to $10,000, or $2.00 per pound, whichever is lower. (Spears Decl., Doc. 40, ¶13.) Since Plaintiff's Carmack Amendment claim will proceed against FedEx, the Court will examine FedEx's argument.

The Carmack Amendment allows a common carrier to limit its liability by a contract or tariff. 49 U.S.C. § 14706(c)(1)(A). But, such limitation must be the product of an "absolute, deliberate, and well-informed choice by the shipper." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 905 F.3d 455, 462 (6th Cir. 2018) (quoting *Acro Automation Sys. v. Iscont Shipping*, 706 F. Supp. 413, 416 (D. Md. 1989)). Courts recognize that a broker can agree to liability limitations on behalf of the shipper. *See Great N. Ry. Co. v. O'Connor,* 232 U.S. 508 (1914); *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 33 (2004). The Supreme Court in both *O'Connor* and *Kirby* held that it is unnecessary for the shipping customer and the common carrier to enter into the liability limitation agreement together; rather, the intermediary's agreement with the carrier is sufficient to bind the customer. *O'Connor,*

22

232 U.S. at 515; *Kirby*, 543 U.S. at 33. The Sixth Circuit has held that a motor carrier must establish four elements to limit its liability: (1) the tariff is maintained and provided to the shipper upon the shipper's request; (2) the shipper has a fair opportunity to choose between two or more levels of liability; (3) the shipper's agreement is obtained as to the choice of liability; and (4) a bill of lading or receipt is issued before moving the cargo. *Exel,* 807 F.3d at 151-52.

FedEx notes that TQL agreed to the inclusion of FedEx's Tariff in its own Terms, as TQL's Multi-Mode Terms state, in part:

> In the event of a conflict in the terms of any agreement between [TQL] and Customer and any Carrier Rules in effect at the time of the shipment, the Carrier Rules shall take precedence and control the interpretation of the rights and obligations of the parties.

(Multi-Mode Terms, Doc. 32-10, Pg. ID 440, ¶7.) Thus, the Multi-Mode Terms incorporate FedEx's Tariff, as FedEx is the carrier. This satisfies the first element. Next, Plaintiff, through TQL, had an opportunity to choose the level of liability, as the Tariff outlined the different levels of services and their respective liabilities. (Spears Decl., Doc. 40, Pg. ID 941.) TQL agreed to FedEx's Volume Services that had liability of $2.00 per pound of cargo, or $10,000, whichever is lower. (*Id.*) Thus, TQL—acting as the broker on behalf of Plaintiff—had an opportunity to choose a different level of liability.

On the third element, Plaintiff signed the TQL Terms, which incorporated the Multi-Mode Terms. (Gibson Aff., Doc. 34, Pg. ID 667.) Gibson testified that he read the Multi-Mode Terms. (Gibson Dep., Doc. 32, Pg. ID 247-49.) And, the Bill of Lading notified Plaintiff that "liability limitation for loss or damage may be applicable." (Bill of Lading,

Doc. 32-11.) Plaintiff therefore knew TQL's Terms incorporated FedEx's Tariff and agreed to that Tariff. Thus, the third prong is satisfied.

Finally, turning to the fourth element, the Bill of Lading was issued before FedEx shipped the goods. (Bill of Lading, Doc. 32-11.) The shipper, a representative of Plaintiff, signed the Bill of Lading on June 12, 2019, before FedEx left with the cargo. (*Id.*; Gibson Dep., Doc. 32, Pg. ID 259-60.) Gibson also attached a copy of the Bill of Lading to each of the eight pallets, implying that Plaintiff had the document prior to shipping. (Gibson Dep., Doc. 32, Pg. ID 259-60.) The fourth element is therefore met.

FedEx has satisfied all elements required for a carrier to limit its liability. There is no genuine issue of material fact as to whether FedEx's Tariff is controlling. FedEx is thus entitled to summary judgment on this issue. If Plaintiff prevails on its Carmack Amendment claim, it can only recover the lesser of $2.00 per pound of cargo or $10,000 from FedEx.

## CONCLUSION

For these reasons, the Court **ORDERS** the following:

1. Plaintiff's Objection to the Affidavit of Marc Bostwick (Doc. 50) is **SUSTAINED IN PART**;

2. The written communications and claim notes attached to Bostwick's Affidavit, along with the portions of the Affidavit that pertain to those documents, **SHALL BE STRICKEN** from the record;

3. Defendant TQL's Motion for Summary Judgment (Doc. 44) is **GRANTED;**

4. Plaintiff's Motion for Summary Judgment (Doc. 39) is **DENIED**;

5. FedEx's Motion for Partial Summary Judgment (Doc. 41) is **GRANTED**;

6. Summary Judgment on Plaintiff's breach of contract claim against TQL is **GRANTED** for TQL;

7. Summary Judgment on Plaintiff's promissory estoppel claim against TQL is **GRANTED** for TQL;

8. TQL's indemnification crossclaim against FedEx is **DISMISSED AS MOOT**;

9. Summary Judgment on Plaintiff's Carmack Amendment claim against FedEx is **DENIED**;

10. Plaintiff's Carmack Amendment claim against FedEx **SHALL PROCEED**; and

11. Plaintiff's recovery on its Carmack Amendment claim **SHALL BE LIMITED** by the terms of FedEx's Tariff.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND